**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>     v.<br><br>AMERICAN HOME ASSURANCE COMPANY, a New York corporation; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH; and Does 1-100, inclusive,<br><br>            Defendants. | No. C-06-2779 MMC<br><br>**AMENDED ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; VACATING HEARING**<br><br>(Docket No. 24) |

Before the Court is the motion filed August 4, 2006 by plaintiff The Charter Oak Fire Insurance Company ("Charter Oak") to remand the instant action to state court. Defendants American Home Assurance Company ("American") and National Union Fire Insurance Company of Pittsburgh ("National") have filed joint opposition, to which Charter Oak has replied. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision on the papers, VACATES the September 8, 2006 hearing, and rules as follows.[1]

## BACKGROUND

Charter Oak alleges that in November 2001, Pauley Construction, Inc. ("Pauley")

---

[1] The amendments are to correct a citation and typographical error.

entered into a subcontract with S.G. Barber Construction, Inc. ("Barber") to perform "various aerial work in connection with rebuild construction for Century Mendocino Cable TV." (See Compl. ¶ 10.) Charter Oak further alleges Barber agreed, in the subcontract, to be responsible for the safety of Barber's employees and subcontractors, and to indemnify and hold Pauley harmless for any injury, damage or loss to persons, including Barber's employees, occurring in connection with Barber's work under the subcontract. (See id.)

Charter Oak afforded Pauley liability insurance coverage under a policy effective during the relevant period. (See id. ¶ 6.) Charter Oak alleges American and National issued liability insurance to Barber, which "provided coverage for defense and indemnity for claims or suits involving bodily injury" during the relevant period. (See id. ¶¶ 7-8.) Charter Oak contends that Pauley, as well as Adelphia Communications Corporation ("Adelphia") and any of its subsidiary or affiliated companies, qualified as insureds under the American and National insurance policies issued to Barber. (See id. ¶¶ 7-8.)

On June 23, 2004, Sifa Tuiaki filed a personal injury lawsuit in the California Superior Court for the City and County of San Francisco ("Tuiaki action"), seeking damages for injuries he assertedly suffered on May 1, 2002 while working for Barber installing fiber optic cable on a construction project in Mendocino County. (See Defendants' Request for Judicial Notice ("RJN") Ex. B.) The defendants to the Tuiaki action include Pauley and Adelphia.[2] (See id. Exs. B and C.) On February 24, 2006, Pauley filed its First Amended Cross-Complaint in the Tuiaki action, asserting claims against Barber for comparative negligence, express contractual indemnity and breach of contract. (See id. Ex. C.) According to Charter Oak, the Tuiaki action is currently pending. (See Compl. ¶ 9.) Charter Oak, American and National are not parties to the Tuiaki action. When Pauley notified Charter Oak of the Tuiaki action, Charter Oak agreed to defend Pauley and certain Adelphia companies under a reservation of rights. (See id. ¶ 15.) Charter Oak alleges it has incurred and paid, and continues to incur and pay, substantial costs and expenses for

---

[2] According to Tuiaki, Adelphia supervised the work performed by Pauley and Barber on the Mendocino County project. (See id. Ex. B at 5.)

2

its defense of Pauley and Adelphia in the Tuiaki action.  (See id.)

Charter Oak further alleges it tendered the defense and indemnity of Pauley and Adelphia in the Tuiaki action to American and that American "accepted plaintiff's tender, but thereafter failed and refused to contribute to costs of defense."  (See id. ¶¶ 16-17.) According to Charter Oak, American and National are affiliated insurers, and notice to American was sufficient to provide notice of the Tuiaki action to National.  (See id. ¶ 16.)

On February 7, 2006, Charter Oak filed the instant action in the California Superior Court for the County of San Diego, asserting claims against American and National for declaratory relief, as well as for equitable subrogation, contribution, and indemnification. On March 10, 2006, defendants removed the action to the United States District Court for the Southern District of California, on the basis of diversity jurisdiction.  On March 15, 2006, defendants filed a motion to transfer venue to this District.  (See RJN Ex. A at 3.)  Charter Oak opposed the motion and filed a motion to remand.  (See id. Ex. A at 9.)  On April 18, 2006, defendants' motion to transfer venue was granted, pursuant to 28 U.S.C. § 1404(a), and the hearing on the motion to remand was vacated.  (See id. Ex. A at 9.)

Charter Oak now moves to remand the case to the California Superior Court for the County of San Diego on the ground this Court should decline to exercise jurisdiction over the instant action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

**LEGAL STANDARD**

The Declaratory Judgment Act, codified at 28 U.S.C. § 2201, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Under the Declaratory Judgment Act, a federal court has "substantial discretion" to decline to exercise jurisdiction over an action for declaratory relief.  See Wilton v. Seven Falls Co., 515 U.S. 277, 286-287 (1995).  In determining whether to

exercise such discretion when a related proceeding is pending in state court, the district court should consider "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." See Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942).

## DISCUSSION

As an initial matter, the Court must determine whether it has discretion to decline to entertain the instant action, since the action includes not only a claim for declaratory relief, but also three state law claims for monetary relief. Specifically, Charter Oak asserts claims for equitable subrogation, contribution, and indemnification. "[W]hen other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).

Relying on Golden Eagle Ins. Co. v. Travelers Companies, 103 F.3d 750, 755 (9th Cir. 1996), *overruled on other grounds by* Dizol, 133 F.3d 1220, and Employers Reinsurance Corp. v. Karussos, 65 F.3d 796, 801 (9th Cir. 1995), *overruled on other grounds by* Dizol, 133 F.3d 1220, Charter Oak argues that the instant action falls within an exception to the general rule. In Golden Eagle, the plaintiff filed suit for declaratory relief, indemnity, and contribution; the Ninth Circuit held the plaintiff's "request for monetary relief is wholly dependent upon a favorable decision on its claim for declaratory relief," and, thus, the entire action "is plainly one for declaratory relief." See id. at 755; see also United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1112 (9th Cir. 2001) (noting "proper analysis" is "whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed").

Charter Oak argues that its claims for equitable subrogation, contribution, and indemnification, like the claims for contribution and indemnity at issue in Golden Eagle, are dependent on its claim for declaratory relief, and, consequently, the existence of such

4

additional claims does not deprive the Court of its discretion to decline to hear the entire action under the Declaratory Judgment Act. American and National do not argue to the contrary. The Court agrees that the instant action falls within the above-stated exception to Dizol's general rule, and, accordingly, will consider whether to exercise its discretion to hear the instant action, or, instead, to remand the case to state court.

In Brillhart, 316 U.S. 491, the Supreme Court set forth the primary factors to be considered by a district court in determining whether to exercise jurisdiction under the Declaratory Judgment Act. See Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 803 (9th Cir. 2002). Under Brillhart, a district court should (1) "avoid needless determination of state law issues"; (2) "discourage litigants from filing declaratory relief actions as a means of forum shopping"; and (3) "avoid duplicative litigation". See id. The Ninth Circuit has held that "[t]he Brillhart factors are not exhaustive" and that the district court also may consider:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

See Dizol, 133 F.3d at 1225 n.5.

"If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." See id. "The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief," however. See id. "[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." See id. at 1225-1226. Ultimately, the district courts are in "the best position to assess how judicial economy, comity and federalism are affected in a given case." See id.

Here, although none of the parties to the instant action is a party to the Tuiaki action, plaintiff, relying on pre-Dizol authority, contends the above-referenced presumption nonetheless is applicable. Prior to its en banc decision in Dizol, the Ninth Circuit had repeatedly held that district courts generally should decline to exercise jurisdiction over insurance declaratory relief actions where a related action was pending in state court, even if the parties to the federal action were not parties to the state action and the insurance issues raised in the federal action were not at issue in the state action; "[i]t [was] enough that the state proceedings [arose] from the same factual circumstances" and that the insurer could have brought suit in state court. See, e.g., Golden Eagle, 103 F.3d at 755; see also Polido v. State Farm Mutual Auto. Ins. Co., 110 F.3d 1418, 1423 (9th Cir. 1997), Am. Nat'l Fire Ins. Co. v. Hungerford, 53 F.3d 1012, 1017-18 (9th Cir. 1995), Karussos, 65 F.3d at 800-01. Such decisions are inconsistent with the later en banc opinion in Dizol, however, in which, as noted, the Ninth Circuit held "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically," but only where "there are parallel state proceedings involving the same issues and parties." See Dizol, 133 F.3d at 1225. Accordingly, the Court next turns to a consideration of the Brillhart factors.

    A. First Brillhart Factor: Needless Determination of State Law Issues

With respect to the first Brillhart factor, avoiding needless determination of state law issues, Charter Oak takes the position that, generally, "[s]tate law issues are best left to be determined by the state courts," (see Motion at 11), while defendants contend "[t]his factor is implicated" only "when there are parallel proceedings which will determine the same state-law issues," (see Opposition at 9). The Court finds neither argument compelling.

As noted above, district courts ordinarily have an obligation to adjudicate state law issues properly presented to them. On the other hand, although the two actions herein relevant are not fully parallel, a substantial overlap of issues nonetheless exists, thus raising the potential for "needless determination," Huth, 298 F.3d at 803, of those issues by this Court. See State Auto Ins. Co. v. Summy, 234 F.3d 131, 134 (3d Cir. 2001)

(suggesting district courts in declaratory judgment actions employ "[a] general policy of restraint when the same issues are pending in a state court").  The issue presented by Charter Oak's complaint is whether defendant's policies provide primary coverage and Charter Oak's policy secondary coverage, thus relieving Charter Oak of its obligation to defend and indemnify Pauley with respect to the injuries claimed in the Tuiaki action. Unlike the cases cited by American and National, however, a resolution of the instant insurance coverage dispute is not based primarily on the language of the relevant policies, but rather on the contractual relationship between and relative fault of Pauley and Barber, the parties to the state action.

In particular, Charter Oak alleges that "Barber promised to indemnify and hold Pauley . . . harmless," (see Complaint ¶ 10), "the incident would not have occurred but for the negligence and fault of Barber," (see Complaint ¶ 11), and "*based on the facts and circumstances of the incident and the construction contract,* [American's general liability policy] is primary to any insurance afforded by [Charter Oak]," (see Complaint ¶ 14 (emphasis added)), after which "National Union's umbrella insurance is triggered," (see id.). Indeed, in describing Charter Oak's claims in the instant action, American and National effectively concede the existence of a substantial overlap of issues with the Tuiaki action. (See Opposition at 2:22-23 ("Charter Oak contends its superior priority position is supported by 'the facts and circumstances of the incident and the construction contract . . . .'") (citing Complaint) (ellipses in original).)

In contrast to the cases on which they rely, nowhere in their opposition do American and National identify coverage issues unrelated to the issues in the underlying action. See, e.g., American Cas. Co. v. Krieger, 181 F.3d 1113, 1115 (9th Cir. 1999) (noting insurer denied coverage in letter stating policy contained endorsement "specifically excluding coverage" for injuries incurred in "athletic event"); Allstate Ins. Co. v. Green, 825 F.2d 1061, 1062 (6th Cir. 1987)  ("It was Allstate's belief, communicated to the [insureds] in a reservation of rights letter, that the policy did not cover their potential liability because of the. . .exclusion."); AcandS, Inc. v. Aetna Casualty and Sur. Co., 666 F.2d 819, 821 (3rd.

Cir. 1981) (noting parties' respective contentions as to trigger of coverage under policy language and state law); Sears, Roebuck & Co. v. American Mut. Liability Ins. Co., 372 F.2ds 435, 439-440 (7th Cir. 1967) (finding coverage and liability issues "independent" where insurer raised issues of timely notice "pursuant to the terms and conditions of the insurance policy" and lack of coverage under "exclusionary provisions"); Stout v. Grain Dealers Mut. Ins. Co., 307 F.2d 521, 524 (4th Cir. 1962) (noting need for separate adjudication of "conflict of interest" between insured and insurance company); American States Ins. Co. v. D'Atri, 375 F.2d 761, 763 (6th Cir. 1967) (finding coverage disputes based on policy's exclusionary and notice provisions "have little to do with any claim of lack of due care"; noting "declaratory judgment proceeding which involves only the extent of the coverage of an insurance policy and not the liability of the insured to the persons injured in the accident, will be entertained in the Federal Court") (internal quotation and citation omitted).

As the Supreme Court has observed, "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." See Brillhart, 491 U.S. at 495; see also Huth, 298 F.3d at 804 (affirming remand of declaratory action involving only state law issues; holding no presumption exists in favor of retaining jurisdiction). Accordingly, the Court finds the first Brillhart factor weighs in favor of abstention.

B.  Second Brillhart Factor: Forum Shopping

The second Brillhart factor, the avoidance of forum shopping, weighs in favor of neither abstention nor the exercise of jurisdiction, as there is no evidence that any party herein has engaged in such conduct. See Huth, 298 F.3d at 804 (finding second factor favored neither party where no evidence of forum shopping). Although Charter Oak originally brought the instant action in state court, the removal of the action by National and American is not, of itself, forum shopping. See id. (finding no forum shopping where state declaratory action filed shortly after federal declaratory action or where state action thereafter removed to federal court; noting one party "merely preferred  state resolution"

and other "preferred federal resolution"); see also First State Ins. Co. v. Callan, 113 F.3d 161, 162 (9th Cir. 1997) ("Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III.").

### C. Third Brillhart Factor: Duplicative Litigation

The third Brillhart factor, avoiding duplicative litigation, ordinarily would favor neither abstention nor the exercise of jurisdiction because the instant declaratory action is before this Court by way of removal; consequently, "the case will be disposed of entirely either in state or federal court, depending upon the outcome of this [motion]." See Huth, 298 F.3d at 803-04 (holding where declaratory judgment actions filed in both federal and state court, with latter thereafter removed to federal court, second Brillhart factor "favored neither party"). In this instance, however, because the issues herein, as discussed, overlap with those in the Tuiaki action, there is a likelihood of duplicative and piecemeal litigation if this Court were to retain jurisdiction over the instant action. Accordingly, this factor weighs in favor of remand.

### D. Additional Factors

Of the various additional factors identified in Dizol, the majority weigh against this Court's exercise of jurisdiction. See Dizol, 133 F.3d at 1225 n.5. Although there is no evidence that defendants removed Charter Oak's complaint merely "for the purposes of procedural fencing or to obtain a 'res judicata' advantage," see id., the instant action will not settle "all aspects of the controversy" or "serve a useful purpose in clarifying the legal relations at issue," see id., without, as discussed, "gratuitous interference with" the Tuiaki action. See Brillhart, 491 U.S. at 495. The presence of overlapping issues likewise creates a disfavored "entanglement," see id., between the federal and state court systems. With respect to the "convenience of the parties," see id., although the Northern District has been determined to be a more convenient venue than the Southern District, American and National, upon remand, may seek a change of venue to the San Francisco Superior Court, a forum within the Northern District and wherein the Tuiaki action is pending. Finally,

because the identical action will go forward on remand, the "availability and relative convenience" of remedies, see id., will remain the same.

In sum, having considered the Brillhart and Dizol factors, the Court finds it appropriate to decline jurisdiction over the instant declaratory action and allow the action to proceed in state court.

**CONCLUSION**

For the reasons set forth above, Charter Oak's motion to remand is hereby GRANTED and the instant action is hereby REMANDED to the Superior Court of California in and for the County of San Diego.

**IT IS SO ORDERED.**

Dated: October 25, 2006

MAXINE M. CHESNEY
United States District Judge